**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ISAAC ZIA,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-CV-02660-ICD

MEMORANDUM OPINION AND ORDER

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 13, 16) and Plaintiff's Reply (ECF NO. 17). For the reasons discussed below, Plaintiff's motion for summary judgment is denied, the Commissioner's cross-motion for summary judgment is granted, and the Commissioner's final decision is affirmed.

The Court reviews the Commissioner's final decision to determine whether it is based on proper legal standards and supported by substantial evidence in the record as a whole. *See Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The record, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. *See Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). If

substantial evidence supports the administrative findings, or if conflicting evidence supports a particular finding, the Commissioner's finding is conclusive. *See Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, *see Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, *see Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g). The sequential evaluation proceeds as follows:

• Step 1: Determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled, and the claim is denied.

• Step 2: If the claimant is not engaged in substantial gainful activity, determine whether the claimant has a severe impairment; if not, the claimant is presumed not disabled, and the claim is denied.

• Step 3: If the claimant has one or more severe impairments, determine whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled, and the claim is granted.

• Step 4: If the claimant's impairment is not listed in the regulations, determine whether the impairment prevents the claimant from performing past work considering the claimant's residual functional capacity; if not, the claimant is presumed not disabled, and the claim is denied.

• Step 5: If the impairment prevents the claimant from performing past work, determine whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled, and the claim is denied.

*See* 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g).

To qualify for benefits, the claimant must establish an inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A). The claimant must provide evidence of a physical or mental impairment of such severity that the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The claimant bears the initial burden of proving the existence of a disability. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case by showing that physical or mental impairment prevents the claimant from engaging in previous work. *See Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy. *See Burkhart v. Bowen*, 856 F.2d at 1340; *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *Hammock v. Bowen*, 879 F.2d at 501.

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act on December 19, 2022. *See* CAR 73.[1] In the application, Plaintiff claims disability began on September 14, 2022. *See id.* Plaintiff's claim was denied initially on April 3, 2023, and upon reconsideration on February 15, 2024. *See id.* Plaintiff requested an administrative hearing, which was held on August 20, 2024, before an Administrative Law Judge (ALJ). *See id.*; CAR 91-114. In an October 17, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on January 8, 2026, ECF No. 11.

1. The claimant has the following severe impairments: bipolar disorder with anxiety and depression; post-traumatic stress disorder (PTSD); and schizoaffective disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations, including listings 12.03, 12.04, 12.06, and 12.15;

3. The claimant has the following residual functional capacity: the claimant can perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to understanding, remembering, and carrying out simple instructions and tasks; he is limited to only occasional interaction with coworkers and the public; and he can tolerate only occasional changes in a routine work setting;

4. The claimant is unable to perform his past relevant work as an automobile mechanic;

5. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as marker, change-house attendant, and automobile detailer.

*See* CAR 75-85.

After the Appeals Council declined review on August 26, 2025, this appeal followed. *See* CAR 1-7.

**III. DISCUSSION**

In his opening brief, Plaintiff argues: (1) the ALJ failed to apply the special procedures for evaluating mental impairments and, in particular, failed to properly address whether Plaintiff's impairments satisfy the "paragraph C" criteria of the mental disorder listings; (2) the ALJ failed to properly evaluate the medical opinions of consultative examiner Gena Clark-McKnight, Ph.D., and treating psychiatric nurse practitioner Adriel Go, NP; and (3) the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective statements and testimony. *See* ECF No. 13, pp. 5-16. Plaintiff asks the Court to credit his testimony as true and remand for an award of benefits. *See id.* at 16-17. The Commissioner contends that the ALJ's decision is free of legal

error and supported by substantial evidence. *See* ECF No. 16. For the reasons discussed below, the Court agrees with the Commissioner.

**A. Evaluation of Plaintiff's Mental Impairment at Step 3**

When a claimant alleges a mental impairment, the Commissioner applies a "special technique" at Steps 2 and 3 of the sequential evaluation. *See* 20 C.F.R. § 404.1520a(a). Under that technique, the ALJ first determines whether the claimant has a medically determinable mental impairment and then rates the degree of functional limitation resulting from the impairment in four broad areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See id.* § 404.1520a(b)-(c). The ALJ's written decision must incorporate the pertinent findings and conclusions and include a specific finding as to the degree of limitation in each of the four areas. *See id.* § 404.1520a(e)(4).

These four areas make up the "paragraph B" criteria of the mental disorder listings. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A2(b). For listings 12.03, 12.04, 12.06, and 12.15, a claimant who does not satisfy the paragraph B criteria may instead satisfy the "paragraph C" criteria, which apply to "serious and persistent" mental disorders. *See id.* § 12.00A2(c). A mental disorder is "serious and persistent" where there is "a medically documented history of the existence of the disorder over a period of at least 2 years," and evidence of both: (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder" (criterion C1); and (2) "[m]arginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life" (criterion C2). *Id.* §§ 12.03C, 12.04C, 12.06C, 12.15C. The regulations explain that criterion C2 is satisfied when "despite [the claimant's] diminished symptoms and signs," the claimant has achieved only marginal adjustment, which the Commissioner will find "when the evidence shows that changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [his] functioning; for example, [the claimant has] become unable to function

outside of [his] home or a more restrictive setting, without substantial psychosocial supports." *Id.* § 12.00G2c.

The listings are "purposefully set at a high level of severity" because they operate as a presumption of disability that makes further inquiry unnecessary. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The claimant bears the burden of establishing that his impairment meets or equals a listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (ALJ not required to compare a claimant's impairments to a listing absent evidence offered in an effort to establish equivalence). At the same time, an ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment," and "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). That evaluation need not appear in any particular section of the decision. "Marcia simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Id.* at 513. The Court therefore reads the ALJ's decision as a whole in determining whether the ALJ's Step 3 finding is adequately explained and supported. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022).

1. <u>The Procedure for Evaluating Mental Impairments</u>

Plaintiff first argues, citing Social Security Ruling (SSR) 85-15, that the ALJ failed to apply the special procedures required for the evaluation of mental impairments. See ECF No. 13, pp. 6-7. The record does not bear this out. The ALJ found that Plaintiff has medically determinable and severe mental impairments, considered listings 12.03, 12.04, 12.06, and 12.15, rated Plaintiff's degree of limitation in each of the four broad functional areas, and explained the evidence supporting each rating. *See* CAR 75-78. The ALJ then separately considered the paragraph C criteria. *See* CAR 78. That is what 20 C.F.R. § 404.1520a requires. SSR 85-15, which addresses the use of the Medical-Vocational Guidelines as a framework for evaluating

solely nonexertional impairments, likewise emphasizes the importance of an individualized assessment of a claimant's ability to meet the mental demands of work. *See* SSR 85-15, 1985 WL 56857, at *5-6. The ALJ made such an assessment, including a residual functional capacity that limits Plaintiff to simple tasks, occasional interaction with coworkers and the public, and occasional changes in a routine work setting, and obtained vocational expert testimony rather than relying on the Guidelines alone. *See* CAR 79, 83-84. Plaintiff does not identify any respect in which the ALJ's analysis departed from the ruling.

2. <u>The Paragraph C Criteria</u>

Plaintiff next argues that the ALJ failed to adequately address whether his impairments satisfy the paragraph C criteria. *See* ECF No. 13, pp. 7-10; ECF No. 17, pp. 2-3. The ALJ addressed paragraph C as follows:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. As discussed in detail above, the claimant has generally demonstrated adequate mental functioning at examinations, has had good response to medications, and has been generally able to maintain adequate daily living and social activities.

CAR 78.

Relying on *Stites v. Comm'r of Soc. Sec.*, No. 3:25-CV-00009-CAB-SBC, 2026 WL 1013510 (S.D. Cal. Apr. 14, 2026), and similar district court decisions, Plaintiff contends that this analysis is a "blanket summary" that does not address whether his disorder is "serious and persistent." *See* ECF No. 13, pp. 8-10; ECF No. 17, pp. 2-3. The Commissioner responds that the ALJ's finding, read together with the rest of the decision, is adequately explained and supported by substantial evidence. *See* ECF No. 16, pp. 11-13.

The Court agrees with the Commissioner. As described in the passage Plaintiff quotes, the ALJ in Stites "summarily concluded that 'the record fails to document the existence of any of [the paragraph C] criteria,'" a conclusion the court found "devoid of any analysis of Plaintiff's treatment history." ECF No. 17, p. 2; *see also* ECF No. 13, p. 8. That is not what happened here. The ALJ gave reasons for the paragraph C finding and expressly tied them to the preceding paragraph B analysis. *See* CAR 78. That analysis, in turn, discussed the evidence bearing most

directly on criterion C2 in considerable detail. In assessing Plaintiff's ability to adapt and manage himself, the ALJ acknowledged that Plaintiff was hospitalized for auditory hallucinations and delusional behavior in April, July, and September 2022, but found that treatment notes reflected medication noncompliance around the time of each hospitalization, that Plaintiff's condition improved quickly and he was discharged within a few days during the July and September 2022 admissions, and that Plaintiff had not required psychiatric hospitalization since he became compliant with medication. *See* CAR 78; *see also* CAR 471, 497, 505, 542. The ALJ further noted that Plaintiff's treatment notes reflected that he regained his mental functioning with psychotropic medication; that, although he was often anxious or worried, he usually demonstrated appropriate behavior, normal thought process, unremarkable thought content, fair insight, and appropriate grooming; and that he was essentially independent in personal care, able to drive, and able to manage his finances. *See* CAR 78. Under *Lewis*, the ALJ was not required to repeat that discussion under the paragraph C heading. *See* 236 F.3d at 513; *see also Kaufmann*, 32 F.4th at 851.

The ALJ's reasoning on this point is not flawless. Because criterion C1 contemplates ongoing treatment "that diminishes the symptoms and signs" of the claimant's mental disorder, a good response to medication does not, by itself, show that the paragraph C criteria are not met. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00G2b-c. The relevant question under criterion C2 is whether, "despite [his] diminished symptoms and signs," Plaintiff has achieved only marginal adjustment. *Id.* § 12.00G2c. The ALJ's remaining reasons, however, speak directly to that question. The ALJ found that Plaintiff generally demonstrated adequate mental functioning on examination and was able to maintain adequate daily living and social activities, and that he had not been hospitalized since he began taking his medications consistently. *See* CAR 78. Those findings bear on whether changes or increased demands have led to an exacerbation of Plaintiff's symptoms and deterioration in his functioning, which is the touchstone of marginal adjustment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00G2c.

Substantial evidence supports those findings. After Plaintiff's discharge from his September 2022 hospitalization, *see* CAR 522, he resumed psychiatric treatment at EAG

Professional Medical Corporation in Modesto, where he was seen by Ms. Go, see CAR 730-40. Over the following twenty-one months, Plaintiff regularly denied to Ms. Go any current or recent auditory or visual hallucinations or paranoia, *see* CAR 680, 692, 704, 716, 727, 738, 764, 779, 793, 811, 826, 842, 857, 872, 1035, 1047, and Ms. Go repeatedly assessed him as "well managed on current medication regimen and . . . both functionally and cognitively stable," *see* CAR 681, 693, 705, 717, 780, 794, 1036, 1048. During that time, Plaintiff reported cooking daily and spending time with friends over dinner, CAR 680; programming for an hour a day on a car-diagnostics application he had developed, CAR 692; feeling "better physically and mentally overall" and checking online job listings for mechanic and driving jobs, CAR 779; registering for a computer science class at a local junior college, CAR 764; and going to Starbucks and a casino with his uncle, CAR 1047. The record contains no evidence of a psychiatric hospitalization or psychiatric emergency room visit after September 2022. Although the State agency psychological consultants are not dispositive, both likewise found that the evidence did not establish the paragraph C criteria. *See* CAR 120, 130.

Plaintiff's contrary arguments do not undermine the ALJ's finding. Much of the history on which Plaintiff relies, including the erratic behavior that began in 2012, his travel between states without telling his family, and the episode in which he threw his clothes and money into the ocean, predates the September 14, 2022, alleged onset date and is drawn from a historical summary carried forward in his treatment records. *See* ECF No. 13, pp. 7 (citing CAR 678), 9; CAR 678. The ALJ did not dispute that Plaintiff has a long history of serious mental illness; the ALJ's finding turned instead on the absence of evidence of marginal adjustment during the period at issue. Plaintiff's assertion that a provider noted in 2024 that he had been hospitalized eight months earlier is not supported by the pages he cites. *See* ECF No. 13, p. 10 (citing CAR 939, 1037). The first is an October 2022 intake assessment in which Plaintiff reported that he had been hospitalized in Las Vegas "about 8 months ago," that is, before his alleged onset date, and in which he denied current auditory hallucinations or paranoid thinking. *See* CAR 939. The second is a July 2024 treatment note from Ms. Go that identifies Plaintiff's therapist but says nothing about a hospitalization. *See* CAR 1037. Plaintiff also cites the January 2024 intake assessment

by his therapist, Dr. Badal, for the propositions that he relapses and has psychotic episodes when his medication is reduced and that he continues to have paranoid thoughts. *See* ECF No. 13, p. 10 (citing CAR 1025). The intake records Plaintiff's report that he often finds himself paranoid and experiencing auditory and visual hallucinations, *see* CAR 1025, which the Court addresses below, but it says nothing about relapses tied to medication changes. That description appears in a historical summary in Ms. Go's notes that describes Plaintiff as 40 years old and therefore refers to events years before the alleged onset date. *See* CAR 678.

To be sure, the record contains some evidence that could support a different conclusion. In January 2024, Plaintiff told Dr. Badal that he often finds himself paranoid and experiencing auditory and visual hallucinations, *see* CAR 1025, and Plaintiff's case manager recorded in December 2023 that Plaintiff endorsed auditory and visual hallucinations and relies on his sister to keep appointments and manage household affairs, *see* CAR 996. In a December 2023 function report completed on Plaintiff's behalf by his sister, Plaintiff reported that his sister prepares his meals and does the household chores, that he uses a reminder application to take his medications, and that his sister accompanies him to his medical appointments. *See* CAR 320, 322. And Ms. Go's notes reflect that a reduction in Plaintiff's Seroquel dosage in November 2023 was followed by disorganized thoughts, difficulty finding words, and distractibility. *See* CAR 873. But this evidence does not compel a finding of marginal adjustment. During the same period, Plaintiff continued to deny hallucinations and paranoia to Ms. Go, *see* CAR 842, 857, 1035, 1047, and Dr. Badal's mental status examinations, while noting anxious mood, pressured speech, poor judgment, and distractibility, recorded unremarkable perception and thought process and intact functional status, *see* CAR 1006, 1025. The ALJ is responsible for resolving such conflicts in the evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Ms. Go's notes also reflect that the symptoms that followed the November 2023 medication change were addressed with an adjustment to another medication, *see* CAR 873, and that Plaintiff continued to be assessed as stable in the months that followed, *see* CAR 842-43, 857-58, 1035-36, 1047-48. Where, as here, the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *See Burch*, 400 F.3d at 679; *Thomas*, 278 F.3d at 954. Plaintiff

has not carried his burden of showing that his impairments satisfy the paragraph C criteria, and the ALJ's contrary finding is adequately explained and supported by substantial evidence.

**B. Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. *See id.*

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. *See id.*; *see also Jones v. Saul*, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. *See Carr v. Comm'r of Soc. Sec.*, 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." *See Buethe v. Comm'r of Soc. Sec.*, 2021 WL 1966202, at *3 (E.D. Cal. May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." *See Buethe*, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. *See Buethe*, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." *See Buethe*, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." *See Buethe*, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" *Buethe*, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" *Buethe*, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

The Ninth Circuit has since confirmed that the revised regulations displace its former requirement that an ALJ provide "specific and legitimate reasons" for rejecting an examining doctor's opinion. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Even so, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)).

At Step 4, the ALJ evaluated the opinions of: (1) the State agency psychological consultants, whose findings the ALJ found largely persuasive; (2) Gena Clark-McKnight, who performed a psychological consultative examination in March 2023; (3) Adriel Go, NP, Plaintiff's treating psychiatric nurse practitioner; and (4) Plaintiff's case manager, whom the ALJ described as Plaintiff's therapist, along with Global Assessment of Functioning scores and a 2015 consultative examination. *See* CAR 81-83. Plaintiff challenges the ALJ's evaluation of the opinions of Dr. Clark-McKnight and Ms. Go. *See* ECF No. 13, pp. 10-14.

1. Dr. Clark-McKnight

Dr. Clark-McKnight examined Plaintiff at the agency's request on March 9, 2023. *See* CAR 745-50. Plaintiff presented as cooperative but anxious, with good eye contact and no bizarre behavior. See CAR 745. He reported a history of steady work attendance, denied having problems with coworkers or customers due to psychiatric symptoms, and reported no significant difficulties with shopping, self-care, or independent living. *See* CAR 746-47. On mental status examination, Plaintiff was alert and fully oriented, with intact intelligence. *See* CAR 747. His attention and concentration were adequate: he recited five digits forward and five in reverse, spelled "world" forward and backward without error, and completed serial threes. See id. His abstraction, calculation, and judgment were intact, his insight was fair, and his thought process was intact, linear, and logical. *See* CAR 748. His memory was impaired, as he recalled none of three words after a brief delay, and he could not interpret a common proverb. *See id.* His mood was anxious, and he reported hearing voices that were not commanding. *See id.* Dr. Clark-McKnight diagnosed PTSD, generalized anxiety disorder, and bipolar I disorder, and opined that Plaintiff has extreme limitations in each of nine work-related abilities, including performing simple and repetitive tasks, maintaining regular attendance, completing a normal workday or workweek, accepting instructions from supervisors, and interacting with coworkers and the public. *See* CAR 748-50.

The ALJ found Dr. Clark-McKnight's opinion not persuasive. *See* CAR 81-82. As to supportability, the ALJ found that the opinion was not supported by the adequate mental functioning Plaintiff demonstrated during the examination itself. *See id.* As to consistency, the ALJ found the opinion inconsistent with other medical records documenting generally adequate mental functioning, with the helpfulness of Plaintiff's psychotropic medications and the absence of further psychiatric hospitalization after 2022, with Plaintiff's statements that he gets along with others, including authority figures, and with his daily living and social activities. *See* CAR 82.

Plaintiff argues that the ALJ improperly substituted his own judgment for that of a specialist, failed to consider Dr. Clark-McKnight's specialization, relied on a "blanket reference" to the record, and should have obtained testimony from a medical expert. *See* ECF No. 13, pp.

10-14. The Commissioner responds that the ALJ reasonably found the opinion unsupported by Dr. Clark-McKnight's own examination findings and inconsistent with the record. *See* ECF No. 16, pp. 7-10.

The Court agrees with the Commissioner. The ALJ's supportability finding is supported by substantial evidence. Dr. Clark-McKnight's examination revealed some abnormalities, including anxious mood, impaired delayed recall, and difficulty interpreting a proverb, which the ALJ acknowledged. *See* CAR 80, 748. But Dr. Clark-McKnight assessed extreme limitations in every work-related ability she addressed, including the ability to perform simple and repetitive tasks, despite finding adequate attention and concentration, intact calculation, abstraction, and judgment, and an intact, linear, and logical thought process. *See* CAR 747-50. She likewise assessed extreme limitations in attendance and in interacting with coworkers, supervisors, and the public, even though Plaintiff was cooperative with good eye contact during the examination and reported steady past attendance and no difficulties with coworkers or customers. *See* CAR 745-46, 749. The ALJ reasonably concluded that Dr. Clark-McKnight's findings do not explain or support limitations of that severity. *See Woods*, 32 F.4th at 791-92; 20 C.F.R. § 404.1520c(c)(1).

The ALJ's consistency finding is also supported by substantial evidence. As discussed above, the treatment records reflect that, after his September 2022 hospitalization, Plaintiff consistently denied hallucinations and paranoia and was assessed as functionally and cognitively stable on his medication regimen. *See* CAR 680-81, 692-93, 779-80, 793-94, 1035-36, 1047-48. Those records are inconsistent with extreme limitations in every area of mental functioning.

Plaintiff's remaining arguments are unpersuasive. First, the ALJ did not impermissibly substitute his own judgment for that of a medical source. The regulations require the ALJ to assess the supportability and consistency of each medical opinion, *see* 20 C.F.R. § 404.1520c(b)(2), and ALJs are presumed capable of independently reviewing and forming conclusions about medical evidence in discharging that duty, *see Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Second, the ALJ was not required to articulate how he considered Dr. Clark-McKnight's specialization. The ALJ must explain how he considered factors other than supportability and consistency only when two or more medical opinions about the same issue are

equally well-supported and consistent with the record but not exactly the same. *See* 20 C.F.R. § 404.1520c(b)(2)-(3). The ALJ did not find that to be the case here. Third, although the ALJ's consistency discussion cites several exhibits without pinpoint citations, the ALJ discussed the findings in those exhibits in detail earlier in the decision. *See* CAR 77-80. The ALJ's decision must be read as a whole, *see Kaufmann*, 32 F.4th at 851, and even a decision of "less than ideal clarity" must be upheld if "the agency's path may reasonably be discerned," *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (internal quotation marks omitted). The ALJ's path is readily discernible here. Fourth, the ALJ was not required to obtain medical expert testimony. An ALJ's duty to develop the record further "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff, who was represented at the hearing, did not ask the ALJ to obtain such testimony, *see* CAR 93-114, and he does not identify any ambiguity or inadequacy in the record that required it.

2. Ms. Go

On April 16, 2024, Ms. Go completed a medical assessment form in which she opined that Plaintiff has marked limitations in following work rules, relating to coworkers, dealing with the public, using judgment, interacting with supervisors, dealing with work stress, functioning independently, and maintaining attention and concentration; extreme limitation in understanding, remembering, and carrying out complex job instructions; marked limitations in understanding, remembering, and carrying out detailed and simple job instructions and in demonstrating reliability; and moderate limitations in maintaining his personal appearance, behaving in an emotionally stable manner, and relating predictably in social situations. *See* CAR 987-88. With respect to the paragraph B criteria, Ms. Go assessed marked limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself, and an extreme limitation in concentrating, persisting, or maintaining pace. *See* CAR 988. She opined that Plaintiff would be absent from work more than twice a month. *See* CAR 989. As support for her assessment, Ms. Go wrote that Plaintiff "has difficulty sustaining focus &

regulating mood symptoms," and she described Plaintiff's response to treatment as "[f]air . . . , however function is still limited." CAR 987, 989.

The ALJ found Ms. Go's opinion not persuasive. *See* CAR 82. As to supportability, the ALJ found that the opinion was not supported by Ms. Go's own treatment notes, which documented generally adequate mental functioning and the general helpfulness of Plaintiff's psychotropic medications. *See id.* As to consistency, the ALJ found that the opinion was inconsistent with other medical records documenting generally adequate mental functioning, the absence of psychiatric hospitalization after 2022, Plaintiff's statements that he gets along with others, and his daily living and social activities. *See id.* Plaintiff argues that the ALJ provided no reasons supported by evidence to discount Ms. Go's opinion and that her opinion is consistent with Dr. Clark-McKnight's. *See* ECF No. 13, pp. 13-14.

The ALJ's supportability finding is supported by substantial evidence. Ms. Go's treatment notes, which span from October 2022 through July 2024, consistently record that Plaintiff denied current or recent hallucinations and paranoia and, at most visits, denied depression, anxiety, and mood swings. *See* CAR 680, 692, 704, 716, 764, 779, 793, 811, 826, 842, 857, 872, 1035, 1047. Her mental status findings typically describe Plaintiff as well-groomed, cooperative, and appropriate in behavior, with goal-directed thought process and no delusions. *See* CAR 680-81, 764, 826, 1036, 1048. Her assessments repeatedly state that Plaintiff "seems to be well managed on current medication regimen and is both functionally and cognitively stable." *See* CAR 681, 693, 705, 717, 780, 794, 1036, 1048. The notes are not uniformly normal. They document anxious mood and worried affect at times, pressured speech and distractibility at several visits in late 2023, medication side effects that led to dosage adjustments, and the November 2023 episode discussed above. *See, e.g.*, CAR 704, 811, 842, 857, 872-73. But the ALJ acknowledged these findings, *see* CAR 80-81, and reasonably concluded that Ms. Go's notes, viewed as a whole, do not support the marked and extreme limitations she assessed. Nor does the brief explanation on Ms. Go's form, which refers generally to difficulty sustaining focus and regulating mood, explain why those difficulties rise to the level

of marked or extreme limitations. *See* CAR 987; *cf. Kitchen v. Kijakazi*, 82 F.4th 732, 740-41 (9th Cir. 2023) (ALJ may discount a check-box opinion that offers little or no explanation).

The ALJ's consistency finding is likewise supported by substantial evidence. At a minimum, the record of generally adequate mental functioning discussed above and the absence of any psychiatric hospitalization after September 2022 are inconsistent with the degree of limitation Ms. Go assessed. *See* CAR 82. That Ms. Go's opinion is consistent with Dr. Clark-McKnight's does not compel a different result. The ALJ permissibly found that each opinion was unsupported by its author's own findings, and consistency under the regulations is measured against "the evidence from other medical sources and nonmedical sources in the claim" as a whole. 20 C.F.R. § 404.1520c(c)(2). Plaintiff's argument that the two opinions should have been credited amounts to a request that the Court reweigh the evidence, which it may not do. *See Thomas*, 278 F.3d at 954.

Because the ALJ's supportability findings and principal consistency findings as to both opinions are supported by substantial evidence, any weakness in the ALJ's additional reliance on Plaintiff's daily activities, which the Court discusses below, does not undermine the ALJ's evaluation of these opinions. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Molina*, 674 F.3d at 1115.

**C. Evaluation of Plaintiff's Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. *See Saelee*, 94 F.3d at 522. An explicit finding must be supported by specific, cogent reasons. *See Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. *See id.* Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." *See id.*; *see also Carmickle*, 533 F.3d at 1160 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007), and *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. *See Bunnell*, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. *See Thomas*, 278 F.3d at 958-59. If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. *See Carmickle*, 533 F.3d at 1161 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling symptoms, the Social Security Act does not require that disability claimants be utterly incapacitated. *See Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). Daily activities may support an adverse finding where they contradict the claimant's other testimony or where the claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Id.* (quoting *Fair*, 885 F.2d at 603); *see also Garrison*, 759 F.3d at 1016. The ALJ must make specific findings in this

regard before relying on daily activities to discount a claimant's testimony. *See Burch*, 400 F.3d at 681.

Ultimately, the clear and convincing standard "requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* In conducting that review, the Court considers only the reasons the ALJ provided and may not affirm on a ground on which the ALJ did not rely. *See Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

At the administrative hearing, Plaintiff, who was 47 years old, testified that he lives with his sister and mother. *See* CAR 95. He drives about once every three weeks because his sister does most of the driving. *See* CAR 96. He experiences stress, anxiety, and low energy, and he hears voices and hallucinates when he is around crowds; the voices say cruel things about him and tell him to do inappropriate things, so he must isolate himself. *See* CAR 97-98. He testified that he cannot focus or concentrate and cannot interact with people. *See* CAR 97. He hears voices three to four times a week. *See* CAR 98. He goes to Starbucks about three times a week for an hour or two, choosing times when it is less crowded, and sometimes still hears voices there. *See* CAR 98, 103. He testified that his medications cause shortness of breath, extreme fatigue, and irritability and do not help him, although his condition would probably be much worse without them. *See* CAR 101-02, 106. Otherwise, he stays home; he does not shop, attend church, or do household chores, and he goes to restaurants occasionally when his sister wants to go. *See* CAR 102-03. He stopped working as a mechanic in 2022 because he could not concentrate, was talking to himself and acting strangely, and was hearing voices. *See* CAR 99, 107-08. In written statements, Plaintiff and his sister described similar symptoms and limitations. *See* CAR 79; *see also* CAR 292-309, 318-25.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record. *See* CAR 79-80. The ALJ gave three principal

reasons. First, the ALJ found that Plaintiff's symptoms improved and were generally well managed with medication. The ALJ noted that each of Plaintiff's 2022 hospitalizations occurred around a time of medication noncompliance, that his condition improved quickly and he was discharged within a few days during the July and September 2022 admissions, that he had not been hospitalized since he became compliant with his medications, that the treatment notes reflect that he regained his mental functioning with psychotropic medication, and that Plaintiff himself acknowledged that his sleep is better with medication and that his symptoms would be worse without it. *See* CAR 80. Second, the ALJ found that the mental status findings in the record were inconsistent with the severity of Plaintiff's allegations. Although the treatment notes often documented anxious mood, worried affect, pressured speech, poor concentration or attention, and poor judgment, Plaintiff usually demonstrated appropriate or cooperative behavior, good eye contact, coherent speech, average intelligence, normal memory, normal thought process, unremarkable thought content, and fair insight, and at the psychological consultative examination he demonstrated adequate attention and concentration and an intact thought process. *See id.* Third, the ALJ found that Plaintiff's daily activities were not as limited as one would expect given his allegations. *See* CAR 80-81. The ALJ also considered Plaintiff's allegations of medication side effects but found that the record reflected no ongoing, serious concerns from any medical source, suggesting that any side effects were not debilitating or were quickly addressed with medication changes. *See* CAR 81.

Plaintiff argues that the ALJ did not identify specific evidence contradicting his testimony; that the ALJ improperly held his mental illness against him by relying on his medication changes and noncompliance, *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); and that the ALJ cherry-picked instances of improvement from a record of symptoms that wax and wane, see Garrison, 759 F.3d at 1017. *See* ECF No. 13, pp. 14-16; ECF No. 17, p. 3. Plaintiff further argues that normal mental status findings do not contradict his reported symptoms. *See* ECF No. 13, p. 6 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)). The Commissioner responds that the ALJ's reasons are clear and convincing and supported by the record. *See* ECF No. 16, pp. 3-6.

The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony. Evidence that treatment has effectively controlled a claimant's symptoms is a proper basis for discounting allegations of disabling symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). The Ninth Circuit has applied that principle to mental impairments, holding that an ALJ permissibly discounted a claimant's testimony about disabling mental health symptoms based on evidence of "a gradual improvement in his functioning with prescribed medication and psychotherapy sessions." *Kitchen*, 82 F.4th at 739. Here, the record amply supports the ALJ's finding. After Plaintiff's September 2022 discharge, his treatment notes consistently reflect that he denied hallucinations and paranoia and was functionally and cognitively stable on his medication regimen. *See* CAR 680-81, 692-93, 704-05, 716-17, 779-80, 793-94, 1035-36, 1047-48. Plaintiff told his case manager in April 2023 that his symptoms were "well controlled with current medications," CAR 1000, told Ms. Go in June 2023 that he felt "better physically and mentally overall," CAR 779, and reported in August 2023 that everything had been "normal," CAR 764. Those reports cannot be squared with Plaintiff's testimony that he hears voices three to four times a week, that his medications do not help, and that he cannot interact with people. See CAR 97-98, 101. The Court recognizes that Plaintiff reported paranoia and hallucinations to his therapist and case manager in late 2023 and early 2024, *see* CAR 996, 1025, while denying them to Ms. Go during the same period, *see* CAR 842, 857, 1035, 1047. Resolving that conflict was the ALJ's responsibility, *see Andrews*, 53 F.3d at 1039, and the ALJ's resolution is a rational one. And the ALJ's finding is consistent with Plaintiff's own testimony that, when he stopped taking his medication for a month in 2022, he "was acting weird" and would have been homeless but for his sister, and that his condition would be "a lot worse" without medication. CAR 106.

Plaintiff's objections to this reasoning are not persuasive. The ALJ did not discount Plaintiff's testimony on the ground that his treatment was conservative or that he failed to seek treatment, so the authorities on which Plaintiff relies are inapposite. *See* ECF No. 13, p. 15. In

*Regennitter* and *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), the Ninth Circuit cautioned against faulting a claimant with a mental impairment for failing to seek treatment. The ALJ here did not do so. The ALJ discussed Plaintiff's 2022 noncompliance to explain the circumstances of his hospitalizations and to contrast them with his stability once he took his medication consistently, and the ALJ considered Plaintiff's explanation that he had stopped taking his medication because of side effects. *See* CAR 80; cf. SSR 16-3p, 2017 WL 5180304, at *9-10 (requiring consideration of a claimant's reasons for not following treatment). Nor is this a case in which the ALJ singled out a few isolated instances of improvement from a record of waxing and waning symptoms. *See Garrison*, 759 F.3d at 1017. The improvement the ALJ relied on is documented at nearly every one of Plaintiff's psychiatric visits over a period of almost two years, and the ALJ expressly acknowledged the abnormal findings that also appear in the record. *See* CAR 80.

The ALJ's reliance on the mental status findings was also proper. Although a lack of supporting objective evidence cannot be the sole basis for discounting a claimant's testimony, it is a factor the ALJ may consider. *See Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." (emphasis omitted)). The ALJ did not rely on the objective evidence alone. Plaintiff is correct that observations of a claimant's cognitive functioning during treatment do not necessarily contradict reported symptoms of depression or anxiety. *See Ghanim*, 763 F.3d at 1164. But the ALJ did not reject Plaintiff's allegations of depression and anxiety; he accounted for them by limiting Plaintiff to simple tasks, occasional interaction with others, and occasional changes in the work setting. *See* CAR 79. What the ALJ discounted was Plaintiff's testimony of frequent hallucinations and of an inability to concentrate or interact with others at all, and the findings the ALJ cited, including cooperative behavior, good eye contact, normal thought process, unremarkable thought content, and adequate attention and concentration, bear directly on that testimony. *See* CAR 80.

The Court agrees with Plaintiff, however, that the ALJ's third reason, Plaintiff's daily activities, is not clear and convincing. The ALJ stated that Plaintiff can "go out alone, shop in stores, attend church once a week, go to a coffee shop 3 times a week, and go to restaurants sometimes," that he spends time with others weekly, drives, manages his finances, and plays games on his phone. CAR 80-81. The ALJ did not explain how these modest activities contradict any particular portion of Plaintiff's testimony or show that Plaintiff can spend a substantial part of his day engaged in pursuits transferable to a work setting. *See Orn*, 495 F.3d at 639; *Garrison*, 759 F.3d at 1016. Both of Plaintiff's function reports state that he can go out alone and drive and that he shops for food about once every two weeks for an hour, *see* CAR 295, 321, but limited outings of that kind do not, without further explanation, contradict Plaintiff's testimony about the frequency and severity of his symptoms. Moreover, the ALJ's finding that Plaintiff attends church once a week rests on Plaintiff's January 2023 function report. *See* CAR 296. The ALJ did not acknowledge that Plaintiff's December 2023 function report listed no places he goes on a regular basis other than his psychiatric appointments, to which his sister accompanies him, *see* CAR 322, or that Plaintiff testified at the hearing that he no longer shops or attends church, *see* CAR 103. And Plaintiff's testimony that he visits a coffee shop at times when it is less crowded, *see* CAR 98, is consistent with, rather than contrary to, his testimony that he avoids crowds. The Commissioner argues that Plaintiff's hearing testimony was inconsistent with his earlier function reports. *See* ECF No. 16, p. 6. But the ALJ did not make that finding, and the Court may not affirm on a ground on which the ALJ did not rely. *See Bray*, 554 F.3d at 1225-26; *Garrison*, 759 F.3d at 1010.

This error is harmless. Where an ALJ provides several reasons for discounting a claimant's testimony and one or more is invalid, the error is harmless so long as the remaining reasons are valid and supported by substantial evidence and the error does not negate the validity of the ALJ's ultimate conclusion. *See Carmickle*, 533 F.3d at 1162; *Molina*, 674 F.3d at 1115. The ALJ's findings that Plaintiff's symptoms improved and were generally well controlled with medication, and that the objective findings in the record are inconsistent with the severity of his allegations, are specific, clear, and convincing, and they are supported by substantial evidence.

The ALJ identified the testimony he found not fully consistent with the record, *see* CAR 79, and explained which evidence undermined it, see CAR 80. Unlike the decisions in *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015), and *Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020), the ALJ's decision here does not merely summarize the medical evidence; it links that evidence to the allegations it undercuts. The ALJ's rationale thus has "the power to convince." *Smartt*, 53 F.4th at 499. Plaintiff may read the record differently, but where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *See Burch*, 400 F.3d at 679.

Because the Court finds no reversible error, it does not reach Plaintiff's request that the Court credit his testimony as true and remand for an award of benefits.

## IV. CONCLUSION

Based on the foregoing, the undersigned hereby ORDERS that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is DENIED;

2. Defendant's Cross-Motion for Summary Judgment, ECF No. 16, is GRANTED;

3. The final decision of the Commissioner of Social Security is AFFIRMED; and

4. The Clerk of the Court is directed to enter judgment in favor of Defendant and close this file.

Dated: November 18, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE